No. 24-12787

---

# In the United States Court of Appeals for the Eleventh Circuit

---

KEITH EDWARDS, AS GUARDIAN AND CONSERVATOR FOR JERRY BLASINGAME,

*Plaintiff-Appellee,*

v.

OFFICER J. GRUBBS, #6416, ET AL.,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:19-cv-02047 (Jones, J.)

---

## Reply Brief of Appellant J. Grubbs

---

James E. Dearing, Jr.
JAMES E. DEARING, JR., P.C.
1596 W. Cleveland Ave.
Suite 102
East Point, Georgia 30334
(404) 870-0010
jdearing@jed-law.com

Harold D. Melton
Charles E. Peeler
Elizabeth P. Waldbeser
Alexander J. Hill
TROUTMAN PEPPER LOCKE, LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
harold.melton@troutman.com
charles.peeler@troutman.com
elizabeth.waldbeser@troutman.com
alex.hill@troutman.com

*Counsel for Appellant Officer J. Grubbs*

# CERTIFICATE OF INTERESTED PERSONS

## No. 24-12787, *Keith Edwards v. Officer J. Grubbs, et al.*

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.

1.    Atlanta Police Department

2.    Blasingame, Jerry

3.    City of Atlanta

4.    Dearing Jr., James E.

5.    Edwards, Keith

6.    Grubbs, Officer J.

7.    Hatchett, Ayanna D.

8.    Hill, Alexander J.

9.    Johnson, Vernon R.

10.    Jones, Hon. Steve C.

11.    Melton, Harold D.

12.    Miller, J. Stacy

13.    Peeler, Charles E.

14.    Tobin, Darren M.

15.    Waldbeser, Elizabeth P.

January 28, 2025                         s/ *Harold D. Melton*
                                         Harold D. Melton

                                         *Counsel for Appellant Officer J.*
                                         *Grubbs*

# TABLE OF CONTENTS

Table of Contents ...................................................................... iii

Table of Authorities.....................................................................iv

Introduction ................................................................................1

Summary of Argument.................................................................2

Argument......................................................................................7

   I. Officer Grubbs was entitled to qualified immunity. .......................7

     A.Officer Grubbs properly raised qualified immunity before and during trial and thus did not waive the defense. ............................8

     B.Officer Grubbs did not violate Mr. Blasingame's constitutional rights.......................................................................................15

     C.Officer Grubbs did not violate clearly established federal law. .......................................................................................21

Conclusion ................................................................................27

Certificate of Compliance .......................................................29

Certificate of Service ..............................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Creighton,*
    483 U.S. 635 (1987)............................................................................ 13

*Ansley v. Heinrich,*
    925 F.2d 1339 (11th Cir. 1991)......................................................... 14

*Baar v. Jefferson Cty. Bd. of Educ.,*
    476 F. App'x 621 (6th Cir. 2012)................................................... 8, 11

*Baxter v. Roberts,*
    54 F.4th 1241 (11th Cir. 2022) .................................................. 22, 23

*Bradley v. Benton,*
    10 F.4th 1232 (11th Cir. 2021) .................3, 5, 6, 16, 17, 22, 23, 25, 26

*Cantu v. City of Dothan, Ala.,*
    974 F.3d 1217 (11th Cir. 2020)......................................................... 24

*Coffin v. Brandau,*
    642 F.3d 999 (11th Cir. 2011)........................................................... 27

*Daker v. Ferrero,*
    No. 1:03CV2526-RWS, 2007 WL 1020844 (N.D. Ga. Mar.
    30, 2007)............................................................................................ 11

*Draper v. Reynolds,*
    369 F.3d 1270 (11th Cir. 2004)......................................................... 23

*Fils v. City of Aventura,*
    647 F.3d 1272 (11th Cir. 2011)............................ 16, 20, 22, 23, 24, 25

*Gennusa v. Canova,*
    748 F.3d 1103 (11th Cir. 2014)...................................................... 9, 15

*Graham v. Connor,*
    490 U.S. 386 (1989).............................................................. 15, 19, 21

*Guzman-Rivera v. Rivera-Cruz,*
    98 F.3d 664 (1st Cir. 1996) ................................................................. 8

*Hadley v. Gutierrez,*
    526 F.3d 1324 (11th Cir. 2008) ......................................................... 18

*Hurley v. Moore,*
    233 F.3d 1295 (11th Cir. 2000) ..................................................... 9, 15

*Kelsey v. Withers,*
    718 F. App'x 817 (11th Cir. 2017) ...................................................... 8

*Kennedy v. Cleveland,*
    797 F.2d 297 (6th Cir. 1986) ............................................................ 14

*Knight v. Miami-Dade Cnty.,*
    856 F.3d 795 (11th Cir. 2017) ..................................................... 20, 27

*Manners v. Cannella,*
    891 F.3d 959 (11th Cir. 2018) ......................................................... 22

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ................................................................... 13, 14

*Montgomery v. Noga,*
    168 F.3d 1282 (11th Cir. 1999) .......................................................... 7

*Moore v. Morgan,*
    922 F.2d 1553 (11th Cir. 1991) ......................................................... 11

*Mullenix v. Luna,*
    577 U.S. 7 (2015) ............................................................................ 21

*Oliver v. Fiorino,*
    586 F.3d 898 (11th Cir. 2009) ..................................................... 16, 23

*Pruitt v. City of Montgomery, Ala.,*
    771 F.2d 1475 (11th Cir. 1985) ........................................................ 24

*Richmond v. Badia,*
    47 F.4th 1172 (11th Cir. 2022) ........................................................ 18

*Skrtich v. Thornton,*
    280 F.3d 1295 (11th Cir. 2002).............................................. 8, 9, 11, 22

*Smith v. LePage,*
    834 F.3d 1285 (11th Cir. 2016)................................................. 15, 19, 23

*Structural Rubber Prods. Co. v. Park Rubber Co.,*
    749 F.2d 707 (Fed. Cir. 1984) ............................................................. 26

*Tennessee v. Garner,*
    471 U.S. 1 (1985)................................................................. 6, 17, 24, 25

*United States v. Guilbert,*
    692 F.2d 1340 (11th Cir. 1982)........................................................... 24

*Wade v. United States,*
    13 F.4th 1217 (11th Cir. 2021) ................................................. 21, 24, 26

*Waldron v. Spicher,*
    954 F.3d 1297 (11th Cir. 2020)..................................................... 21, 22

*Wate v. Kubler,*
    839 F.3d 1012 (11th Cir. 2016)........................................................... 23

*Weiland v. Palm Beach Cnty. Sheriff's Off.,*
    792 F.3d 1313 (11th Cir. 2015)..................................................... 15, 19

*Wilson v. Attaway,*
    757 F.2d 1227 (11th Cir. 1985)....................................................... 9, 15

## Other Authorities

Fourth Amendment................................................................................ 20

11th Cir. R. 28-1(k)................................................................................ 13

## INTRODUCTION

Plaintiff Keith Edwards offers no compelling responses to Officer Grubbs' arguments that, as a matter of law, he was entitled to qualified immunity. Instead of answering Officer Grubbs' arguments, Plaintiff merely summarizes the record below without regard to qualified immunity. For example, Plaintiff expends nine pages discussing evidence presented at trial on Officer Grubbs' body camera usage and the City of Atlanta's body camera usage policies, Appellee's Br. at 11–20, but those facts are relevant only to the City's municipal liability not at issue in this appeal. And in response to Officer Grubbs' explanation of this Court's excessive-force law that was clearly established at the time of the incident in July 2018, Plaintiff cites only one case that *postdates* the incident at issue by three years, and therefore cannot suffice as clearly established precedent when the underlying events occurred. Realizing that his own arguments are meritless, Plaintiff for the first time asserts that Officer Grubbs waived qualified immunity but ignores that Officer Grubbs repeatedly raised the defense before and during trial.

In sum, Plaintiff fails to offer a single compelling response to the key legal issues raised in this appeal. The district court's analysis was

1

improperly swayed by the consequences of Officer Grubbs' actions and 20/20 hindsight. Consequently, the district court committed several legal errors: it did not analyze the situation from the perspective of a reasonable officer in Officer Grubbs' shoes, and it misread and misapplied clearly established Eleventh Circuit precedent. This Court should reverse the district court because Officer Grubbs is entitled to qualified immunity.

## SUMMARY OF ARGUMENT

The district court improperly held that a reasonable jury could not have found that Officer Grubbs was entitled to qualified immunity. However, qualified immunity shields Officer Grubbs as a matter of law.

Plaintiff argues that the district court's ruling was correct for four reasons. First, Plaintiff argues that Officer Grubbs waived qualified immunity because he would have benefited from raising an affirmative defense earlier. But qualified immunity is not a waivable defense and a defendant has discretion to raise qualified immunity at trial for strategic reasons. Officer Grubbs properly raised his qualified immunity defense in his answer and amended answer, and Plaintiff even jointly proposed the pretrial order stating that Officer Grubbs' qualified immunity would

be decided during trial. There is no suggestion of an improper purpose in the timing of the defense. At trial, both parties argued and briefed qualified immunity, which the district court then decided in its own discretion. Rather, it is Plaintiff who waived the argument by failing to raise waiver until this late stage of the appeal.

Second, he insists that *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021), controls the outcome of this case. But despite extensively quoting *Bradley*, Plaintiff does not engage with the key factor distinguishing this case from *Bradley*: the visibility of the situational hazard to a reasonable officer at the scene. In contrast to the "eight-foot-high concrete wall" in *Bradley*, Mr. Blasingame was not "elevated" on a raised surface, but was on firm ground, running on a grassy hill without any visible hazards.

Third, Plaintiff insists that Officer Grubbs "lacked probable cause" to think Mr. Blasingame posed a threat. Plaintiff does not seem to challenge probable cause to stop or arrest. Probable cause existed for both. To the extent Plaintiff argues that Officer Grubbs used disproportionate force because he had no probable cause to seize or arrest Mr. Blasingame, that argument fails as a matter of law. A genuine excessive force claim challenges the manner of an arrest or seizure,

regardless of whether the officer had the authority to conduct an arrest. To the extent Plaintiff argues that Officer Grubbs used force disproportionate to the situation, that argument also fails. The entire incident took place in less than a minute. Mr. Blasingame was violating the law, he ran from an officer who was attempting to apprehend him, he swung his arm backwards at Officer Grubbs when he got close, and he refused to comply with Officer Grubbs' instructions to stop. Given these facts and that Officer Grubbs could not see the utility box, tasing Mr. Blasingame was not an objectively unreasonable decision.

Fourth and finally, Plaintiff argues that the testimony of his trial experts demonstrated that the force Officer Grubbs used against Mr. Blasingame was excessive beyond a doubt and that the jury's verdict on the point cannot be overturned. But Plaintiff's argument suffers from a fatal flaw. Expert opinion does not define the contours of constitutional law. Rather, whether force is constitutional is a legal matter judged by the courts under the Fourth Amendment's objective reasonableness standard.

Even assuming Mr. Blasingame's constitutional rights were violated, Officer Grubbs is still entitled to qualified immunity because

the law was not clearly established at the time of the tasing. This Court's published cases from July 2018 and earlier involving tasers used on arrestees all find constitutional violations where an officer tased an already-subdued and unresistant suspect repeatedly. Conversely, there are no published cases predating July 2018 holding that an officer cannot use a taser where a suspect was uncooperative, hostile, belligerent, or threatening to officers. As a result, there was no case existing at the time giving notice to Officer Grubbs that his conduct violated clearly established standards under the Fourth Amendment. Mr. Blasingame was suspected of a crime, failed to comply with Officer Grubbs' instructions, fled, and swung his arm backwards at Officer Grubbs when he drew near. It is immaterial that Mr. Blasingame's suspected crime was not violent or that he did not do more to threaten Officer Grubbs. And Officer Grubbs tased Mr. Blasingame only once.

*Bradley v. Benton* seems to have become the focal point of analysis. In that case, an officer used excessive force when he tased a fleeing suspect as the suspect stood on top of an eight-foot concrete wall. But *Bradley* could not have put Officer Grubbs on notice because it was decided nearly three years later, in 2021, and is factually distinguishable.

Nor could *Tennessee v. Garner*, 471 U.S. 1 (1985), have put Officer Grubbs on notice. In *Garner*, the United States Supreme Court held that a police officer used excessive force when he shot an unarmed, fleeing burglary suspect to stop his flight. Again, this case is factually inapposite. *Garner* made clear that it was impermissible to shoot an unarmed fleeing suspect. The case did nothing to inform Officer Grubbs of the constitutional limits to his encounter with Mr. Blasingame. A taser is not typically a deadly weapon, and a reasonable officer using it once on a fleeing suspect on a grassy hill with no visible dangers or obstacles would not have known he was applying force that had a substantial risk of causing death or serious bodily harm. Plaintiff merely summarizes or excerpts the holdings from *Bradley* and *Garner* and does not explain how they clearly established the law for our present facts in July 2018.

Plaintiff also asserts that the only plausible way Officer Grubbs could argue that he was not on notice of the deadliness of his tasing Mr. Blasingame would be "to deny the extensive training he allegedly received regarding his use of taser." Appellee's Br. at 38. But the City's standard operating procedures, policy manual, and training provided to its officers are not relevant to whether the law was clearly established in

6

July 2018. Only cases from the United States Supreme Court, this Court, or the Supreme Court of Georgia can clearly establish the law. At most, the City's training materials are relevant to refute Plaintiff's failure to train claim against the City, which is not at issue in this appeal.

## ARGUMENT

### I.    Officer Grubbs was entitled to qualified immunity.

The district court improperly held that a reasonable jury could not have found that Officer Grubbs was entitled to qualified immunity, but qualified immunity bars Plaintiff's claims as a matter of law.

Plaintiff attempts to reframe whether Officer Grubbs is entitled to qualified immunity as an evidentiary issue rather than a *legal* issue. *See, e.g.*, Appellee's Br. at 29–30. In so doing, he misses the point of Officer Grubbs' arguments. Even taking the facts in the light most favorable to Plaintiff and Mr. Blasingame, the district court's ruling on Officer Grubbs' motion for judgment as a matter of law was *legally* erroneous and should be reversed under this Court's de novo review of legal issues. *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999).

7

A.   **Officer Grubbs properly raised qualified immunity before and during trial and thus did not waive the defense.**

Officer Grubbs timely raised and argued his qualified immunity defense, negating any notion of waiver. This Court has held that "qualified immunity can be pled at various stages in a case," including "at trial." *Skrtich v. Thornton*, 280 F.3d 1295, 1306–07 (11th Cir. 2002) (citing *Ansley v. Heinrich*, 925 F.2d 1339, 1341 (11th Cir. 1991)); *Kelsey v. Withers*, 718 F. App'x 817, 822 (11th Cir. 2017) (per curiam) (citing *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994), and affirming that "a defendant . . . may . . . raise [qualified immunity] after discovery on summary judgment or at trial"); *see also Guzman-Rivera v. Rivera-Cruz*, 98 F.3d 664, 667 (1st Cir. 1996). While courts prefer that a defendant raise a qualified immunity defense early in a case to avoid expenses and delay, a defendant can first assert a qualified immunity defense at trial so long as there are not "improper motives in asserting the defense," which could warrant the court's discretion in the "unusual case where the district court should have deemed the defense waived." *Baar v. Jefferson Cty. Bd. of Educ.*, 476 F. App'x 621, 624–26 (6th Cir. 2012) (citing *English*, 23 F.3d at 1090 n.1) (finding that asserting qualified defense in

8

an answer to original complaint suffices); *Skrtich*, 280 F.3d at 1306–07 (citing *English*, 23 F.3d at 1089). Such improper motives include "abusive delays or manipulative uses," yet even those motives do not *mandate* waiver as the district court retains discretion to permit a defendant to raise a qualified immunity defense and would only apply to the specific phase of the case for which the defense could have been asserted. *Id.* at 1306–07.

But the Court need not even reach the question of waiver. A plaintiff waives the right to make an argument on appeal when failing to raise a waiver argument until after trial or on appeal. This Court has previously found that a plaintiff waived a qualified immunity waiver argument when qualified immunity was in the pre-trial order and the plaintiff failed to object. *Wilson v. Attaway*, 757 F.2d 1227, 1246–47 (11th Cir. 1985), *overruled in part on other grounds*, 107 F.4th 1304. Further, when a plaintiff does not raise any waiver argument until appeal, this Court will not hear the argument. *Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court."); *Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014) ("[I]f . . . part[ies] hope[ ] to preserve a claim, argument,

theory, or defense on appeal, [they] must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it." (citation omitted)).

Here, there is nothing to suggest that Officer Grubbs waived qualified immunity. First, Officer Grubbs provided ample notice to Plaintiff that qualified immunity was on the table. In Officer Grubbs' answer, Doc. 8 at 2, answer to amended complaint Doc. 59 at 2, and in the pre-trial order, Doc. 102 at 6, Officer Grubbs raised qualified immunity as a defense. Indeed, the pretrial order—which Plaintiff jointly proposed—states "[t]he legal issues to be tried [include] . . . [w]hether Defendant Grubbs is entitled to qualified immunity." Doc. 102 at 5–6; *see also* Doc. 96-5 at 2 ("Officer Grubbs asserts that he is entitled to . . . qualified . . . immunity."). At trial, the parties orally presented arguments, Trial Transcript ("Tr.") 1450:19–1481:6, and submitted supporting briefs, Docs.151, 152, sufficiently and timely developing the qualified immunity argument. Clarifying that it viewed qualified immunity as a question of law, the district court then decided the issue of qualified immunity. Doc. 153; Tr. 1458:14–15. All these instances prove that not only did Officer Grubbs timely raise the defense, but that

Plaintiff was on notice. *See Moore v. Morgan*, 922 F.2d 1553, 1557–58 (11th Cir. 1991) (finding plaintiff on notice when "the contents of a pretrial order and subsequent events put the issue of qualified immunity in issue" unlike when there is "no pretrial order . . . [and] the issue [and] the words[ ] of qualified immunity w[ere] [n]ever raised before or during trial").

Second, Officer Grubbs was not required to seek dismissal through pre-trial motions. *Skrtich*, 280 F.3d at 1306. During the development of the trial record, Officer Grubbs realized that the qualified immunity defense was fully viable, and so raised it. Tr. 1457:3–1460:6. Thus, during trial, ***and before the jury verdict***, Officer Grubbs orally moved and argued for judgment as a matter of law on the basis of qualified immunity. *See* Doc. 153 at 1. Officer Grubbs' discretion to argue qualified immunity at trial was thus proper. *See Skrtich*, 280 F.3d at 1306; *Baar*, 476 Fed. App'x at 624–26; *see also Daker v. Ferrero*, No. 1:03CV2526-RWS, 2007 WL 1020844, at *3 (N.D. Ga. Mar. 30, 2007) (finding "[d]efendants are free to raise the issue of qualified immunity at trial" despite waiving pretrial summary judgment).

Third, Officer Grubbs' motivation for raising qualified immunity was proper. The trial record makes clear that the timing of the defense was a tactical decision based on Officer Grubbs' belief that it was better to resolve the issue once it was clearer which facts were undisputed. Tr. 1457:3–1460:6 ("We believe that qualified immunity, particularly after the evidence we heard, did not establish that there was something that Officer Grubbs did that was well out of bounds."). Notwithstanding Plaintiff's failure to cite any authority suggesting Officer Grubbs' qualified immunity defense is improper, Plaintiff admits that on August 24, 2022, Officer Grubbs raised the qualified immunity defense, two days before the jury verdict. Appellee's Br. at 31–32. Further, all affirmative defenses, once invoked, would fall subject to Plaintiff's accusation of an "improper purpose of negating a jury's determination." Appellee's Br. at 32. Importantly, the district court properly decided that qualified immunity here was a question of law, so it would never be appropriate for the "jury's determination" in this trial. Doc. 198 at 1458:14–15 ("Quali[fied] immunity is a legal argument decided by the Court."). That Officer Grubbs fully argued the defense at trial after development of the factual record is not improper because "the resolution of these legal issues

12

will entail consideration of the factual allegations that make up the plaintiff's claim for relief." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).

The most Plaintiff can argue is that it is generally desirable to assert qualified immunity early in litigation to gain "the benefit," Appellee's Br. at 31, of "protect[ing] public officials from broad ranging discovery that can be peculiarly disruptive of effective government," *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987) (quotations omitted). Plaintiff asserts that *Anderson* means that qualified immunity *must* be asserted before trial, but *Anderson* does not say that. In context, *Anderson* shows that the Court was answering the appellee's assertion that more discovery was needed before the appellant could claim qualified immunity—*not* whether post-discovery affirmative defenses were proper. *Id.* Likewise, Plaintiff twists *Mitchell*, 472 U.S. 511,[1] to suggest that qualified immunity cannot be used as a defense, but the *Mitchell* Court was explaining that the absolute immunity from trial is so strong that denial of qualified immunity is immediately appealable, unlike a "mere" defense that is not immediately appealable. *Id.* at 526–

---

[1] In Plaintiff's argument regarding qualified immunity, Plaintiff fails to conform to 11th Cir. R. 28-1(k) which requires "[c]itations [to] reference the specific page number(s) which relate to the proposition for which the case is cited." *See* App.31 (citing cases without pin cites).

27; *see Kennedy v. Cleveland*, 797 F.2d 297, 300 (6th Cir. 1986), *cert. denied* 479 U.S. 1103, (clarifying that *Mitchell* "do[es] not preclude the interposition of [qualified immunity] . . . as a defense to liability on the merits"). The other case Plaintiff cites, *Ansley v. Heinrich,* simply confirms the truism that it is "preferabl[e]" to decide qualified immunity before trial, but *Ansley* dealt with the case where "qualified immunity dropped out of the case" and does not preclude raising qualified immunity at trial so long as the matter is before the district court as a question of law, 925 F.2d 1339, 1347–48 (11th Cir. 1991).

In contrast to Officer Grubbs' assertions of qualified immunity, Plaintiff never even raised waiver before the district court. *See* Doc. 152 (failing to raise waiver in opposition to Officer Grubbs' motion for judgment as a matter of law). This is unsurprising given Plaintiff's recognition in the joint proposed pretrial order that qualified immunity remained as an issue to be decided. Doc. 96 at 6. The district court thus properly retained discretion to answer the qualified immunity question as opposed to *sua sponte* considering whether it had been waived, *see* Doc. 153. "The belated contention by [P]laintiff[ ] that the assertion of qualified immunity . . . ha[s] come too late . . . , itself came too late. The

pre-trial order had recognized the existence of the issue[.]" *Wilson*, 757 F.2d at 1247. Thus, if there is any waiver, it is Plaintiff's own waiver of this argument by failing to preserve the issue for appeal. *Hurley*, 233 F.3d at 1297 ("Arguments raised for the first time on appeal are not properly before this Court."); *Gennusa*, 748 F.3d at 1116.

**B.  Officer Grubbs did not violate Mr. Blasingame's constitutional rights.**

Officer Grubbs did not violate Mr. Blasingame's Fourth Amendment rights because he did not use excessive force when attempting to seize Mr. Blasingame. Officer Grubbs made a "split-second judgment," *Graham v. Connor*, 490 U.S. 386, 396–97 (1989), about the necessary amount of force necessary to subdue Mr. Blasingame. That decision should not be judged by "the 20/20 vision of hindsight." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1326 (11th Cir. 2015) (quotation omitted). Mr. Blasingame was breaking the law and he "disobeyed instructions," *Smith v. LePage*, 834 F.3d 1285, 1294 (11th Cir. 2016)—he ran from an officer who was attempting to apprehend him, he did not comply with Officer Grubbs' instructions to stop, and swiped at Officer Grubbs as he drew closer. Tr. 1051:11–18, 1087:10–18.

Further, it was undisputed at trial that, from where he stood, Officer Grubbs could not see the power box or the bottom of the hill. Tr. 538:23–539:5, 1089:4–12, 1090:16–1091:1. As a result, the power box and concrete pad—the situational hazard that injured Mr. Blasingame— was not apparent to a reasonable officer at the scene, and tasing Mr. Blasingame, who "appear[ed] . . . uncooperative" and actively fled arrest, was not an unreasonable decision. *Fils v. City of Aventura*, 647 F.3d 1272, 1290 (11th Cir. 2011) (citation omitted).

In this Court's excessive force cases involving tasers, an officer violates the Fourth Amendment when he tases a suspect in a way that causes the suspect to harmfully encounter a situational hazard that was obvious to a reasonable officer at the scene. *See, e.g.*, *Bradley*, 10 F.4th at 1240 (tasing a suspect while he was "atop an eight-foot wall" was excessive force); *Oliver v. Fiorino*, 586 F.3d 898, 906 (11th Cir. 2009) (tasing a suspect and causing him to lay immobilized on "burning hot pavement" was excessive force). The district court did not address the visibility of the dangerous utility box to Officer Grubbs at the time, and instead focused on the unforeseen results of Officer Grubbs' actions through the lens of hindsight.

Plaintiff argues that the district court's ruling was correct for three reasons. First, he insists that *Bradley*, 10 F.4th 1232, and *Garner*, 471 U.S. 1, control the outcome of this case. Appellee's Br. 32–41. Both cases are inapplicable. Despite extensively quoting *Bradley*, Plaintiff does not engage with the key factor distinguishing this case from *Bradley*. In *Bradley*, the environmental hazard to the suspect, who was standing on an "eight-foot-high concrete wall" when tased, was apparent to a reasonable officer at the scene. 10 F.4th at 1236. In contrast, Mr. Blasingame was not "elevated" on a raised surface. He was on firm ground. A grassy hill without any visible hazards does not present the same apparent hazard that could turn a measured application of force into deadly force. Plaintiff offers no response to this key distinction.

Second, Plaintiff insists that Officer Grubbs "lacked probable cause" to think Mr. Blasingame posed a threat. Appellee's Br. at 33–35. It is not clear whether, by using the term "probable cause" Plaintiff means that Officer Grubbs lacked probable cause to seize or arrest Mr. Blasingame and therefore his use of force was *de facto* excessive, or whether he simply means that, under the *Graham* factors, Officer

Grubbs' use of force was disproportionate to the situation. Either way, Plaintiff is wrong.

To the extent Plaintiff argues that Officer Grubbs used disproportionate force because he had no probable cause to seize or arrest Mr. Blasingame, that argument fails as a matter of law. "[A] genuine excessive force claim" relates to the manner in which an officer conducted an arrest or seizure, and is "independent of whether law enforcement had the power to arrest." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (quotation omitted); *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022) (quotations omitted). Thus, whether Officer Grubbs had probable cause to seize or arrest Mr. Blasingame is irrelevant to whether Officer Grubbs used excessive force in attempting to seize or arrest Mr. Blasingame.[2]

To the extent Plaintiff means that under the *Graham v. Connor* factors, Officer Grubbs' use of force was disproportionate to the situation, that argument also fails. The *Graham* factors determine whether an officer used unreasonable force by weighing "whether the suspect poses

---

[2] Even under Plaintiff's description of the facts, Officer Grubbs had both articulable suspicion and probable cause sufficient to justify, at minimum, a brief tier two encounter.

18

an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. Under these principles, Officer Grubbs' use of force was reasonable. The entire incident took place in less than a minute. Tr. 1090:3–6. Officer Grubbs made a "split-second judgment" about the amount of force necessary to subdue Mr. Blasingame, *Graham*, 490 U.S. at 396–97, and Office Grubbs was under no obligation to simply allow Mr. Blasingame to flee. That decision should not be judged "with the 20/20 vision of hindsight." *Weiland*, 792 F.3d at 1326. Mr. Blasingame was breaking the law and he "disobeyed instructions," *Smith*, 834 F.3d at 1294—he ran from an officer who was attempting to apprehend him, he did not comply with Officer Grubbs' instructions to stop, and swung his arm backwards at the officer when he drew near. Tr. 1051:11–18, 1087:10–18. Further, it was undisputed at trial that, from where he stood, Officer Grubbs could not see the power box or the bottom of the hill, but he knew that the hill sloped downwards towards another road. Tr. 538:23–539:5, 1089:4–12, 1090:16–1091:1. As a result, the power box and concrete pad—the situational hazard that injured Mr. Blasingame— were not apparent to a reasonable officer at the scene, and tasing Mr.

Blasingame, who "appear[ed] . . . uncooperative" and actively fled arrest was not an unreasonable decision. *Fils*, 647 F.3d at 1290.

At the moment Mr. Blasingame fled, Officer Grubbs had only three lawfully available options: (1) he could have decided not to pursue and to let Mr. Blasingame successfully flee—which is not constitutionally required; (2) he could have employed some other form of physical force, such as tackling Mr. Blasingame, which posed a full, separate set of risks given Mr. Blasingame's age; or (3) he could have deployed his taser. Officer Grubbs made a "split-second judgment" between these three options, and there was no clearly established constitutional standard at the time that mandated the selection among these options, which should not be determined based on "20/20 hindsight."

Third and finally, Plaintiff argues that the testimony of his trial experts demonstrated that the force Officer Grubbs used against Mr. Blasingame was excessive beyond doubt and that the jury's verdict on the point cannot be overturned. Appellee's Br. at 36–37. But Plaintiff's argument suffers from a fatal flaw. Expert opinion does not define the contours of constitutional law. *See Knight v. Miami-Dade Cnty.*, 856 F.3d 795, 813 (11th Cir. 2017) ("[A] plaintiff cannot succeed [on a Fourth

20

Amendment claim] by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless." (citation omitted)). Rather, whether force is constitutional is a legal matter judged by the courts under the Fourth Amendment's "objective reasonableness standard." *Graham*, 490 U.S. at 395–96.

### C. Officer Grubbs did not violate clearly established federal law.

Even assuming Mr. Blasingame's constitutional rights were violated, Officer Grubbs is still entitled to qualified immunity because the law was not clearly established at the time of the tasing. A right must be clearly established "at the time of the challenged conduct," *Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021), *cert. denied sub nom. Wade v. Lewis*, 142 S. Ct. 1419 (2022), and the existence of materially similar caselaw is "especially important in the Fourth Amendment context." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). When the applicable legal standard is general, it "must be established with obvious clarity by the caselaw" so every objectively reasonable officer facing Officer Grubbs' circumstances would know that his conduct violated federal law when he acted. *Waldron v. Spicher*, 954 F.3d 1297, 1305 (11th Cir. 2020)

(quotation omitted); *see, e.g., Skrtich*, 280 F.3d at 1303–04 (applying case precedent as of 1998, when the events occurred). Put simply, "prior case A" must inform an officer that "what he was doing in instant case B was against the law." *Baxter v. Roberts*, 54 F.4th 1241, 1263 (11th Cir. 2022). Although Plaintiff gripes that Officer Grubbs did not address *Bradley* in his motion for judgment as a matter of law, Appellee's Br. at 37–38, Officer Grubbs had no obligation to address a new case that was clearly not "established" when Officer Grubbs acted in July 2018, *Waldron*, 954 F.3d at 1305.

At the time Officer Grubbs acted in July 2018—and likely even today—the law in this Circuit was that tasing an arrestee "beyond [the arrestee's] complete physical capitulation" repeatedly in a short time period "where an arrestee was mostly cooperative and made no attempt to flee" was excessive. *Manners v. Cannella*, 891 F.3d 959, 974 (11th Cir. 2018) (quotation omitted). Case law also clearly established that when an arrestee appears hostile, using a taser to subdue the arrestee is generally "preferable" to a physical struggle. *Fils*, 647 F.3d 1272. Consistent with those general statements, this Court's published cases from July 2018 and earlier involving tasers used on arrestees all find

constitutional violations where an officer tased an already-subdued and unresistant suspect repeatedly. *See, e.g.*, *Oliver*, 586 F.3d 898; *Wate v. Kubler*, 839 F.3d 1012 (11th Cir. 2016); *Fils*, 647 F.3d 1272. Conversely, there is no constitutional violation where a suspect was uncooperative, hostile, belligerent, or threatening to officers, or where there is a hidden environmental hazard. *Draper v. Reynolds*, 369 F.3d 1270, 1278–79 (11th Cir. 2004); *Smith*, 834 F.3d 1285. Plaintiff does not contest any of these cases nor that the "clearly established" precedent must be the case law as it existed in 2018.

Even though Mr. Blasingame was not suspected of a violent crime and did not threaten Officer Grubbs, the facts remain that Mr. Blasingame was suspected of a crime, failed to comply with Officer Grubbs' instructions, fled, and swung his arm backwards at Officer Grubbs as he drew near. And in contrast to the cases finding constitutional violations, Officer Grubbs tased Mr. Blasingame only once. There was no "prior case A" to inform Officer Grubbs that "what he was doing in instant case B was against the law." *Baxter*, 54 F.4th at 1263. *Bradley* could not have put Officer Grubbs on notice because, in addition to being factually inapplicable, it post-dates the conduct at issue by about

23

three years. *Wade*, 13 F.4th at 1225 (stating a right must be clearly established "at the time of the challenged conduct.").

Nor could *Tennessee v. Garner* have put Officer Grubbs on notice. In *Garner*, the Supreme Court held that a police officer used excessive force when he shot an unarmed, fleeing burglary suspect to stop his flight. *Garner*, 471 U.S. at 21. It was not apparent to a reasonable officer at the scene that *Garner's* prohibition against shooting an unarmed fleeing suspect would likewise prohibit the use of a single taser shock on Mr. Blasingame. "[A] taser generally is not a deadly weapon," *Cantu v. City of Dothan, Ala.*, 974 F.3d 1217, 1231 (11th Cir. 2020) (citing *Fils*, 647 F.3d at 1276 n.2), and a reasonable officer using it once on a fleeing suspect on firm ground with and no visible dangers or obstacles would not have known he was applying force that had a "substantial risk of causing death or serious bodily harm." *Pruitt v. City of Montgomery, Ala.*, 771 F.2d 1475, 1479 n.10 (11th Cir. 1985); *see also United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982) ("Whether an object constitutes a dangerous weapon turns not on the object's latent capability alone, but also on the matter in which the object was used.") (cleaned up). If anything, case law would encourage Officer Grubbs to deploy a taser

in this instance as opposed to resorting to other available options like tackling him. *Fils*, 647 F.3d 1272 (stating that a taser is "preferable" to a physical struggle).

Plaintiff ignores Officer Grubbs' arguments that *Bradley* and *Garner* fail to clearly establish that his conduct was objectively unreasonable in violation of clearly established standards. Instead, Plaintiff simply insists that those cases definitively settle the issue. Appellee's Br. at 37–41. But Plaintiff merely summarizes or excerpts the holdings from *Bradley* and *Garner* and does not explain *how* they clearly establish the law or *how* a reasonable officer in Officer Grubbs' position could have been on notice that, in July 2018, tasing a fleeing, resisting suspect who was on firm ground, running up a grassy hill, with no visible dangers, violated the Fourth Amendment based on those two cases.

Before the district court, Officer Grubbs made a legal argument that qualified immunity existed. Tr. 1477:24–1478:9. Plaintiff, however, bizarrely suggests that Officer Grubbs somehow conceded any legal arguments as to qualified immunity by stating there was a factual question as to whether "Officer Grubbs knew the situation" about the danger of the hill and hidden utility. Appellee Br. at 40. Not only was

25

Officer Grubbs' counsel's comment a response to a question regarding *Bradley*—a completely inapplicable case from 2021, *supra* 21–24—but the district court and this Court have determined that qualified immunity is a legal issue, *supra* 13–14. In no way does counsel's reference to a factual defense concede that there was a constitutional violation, nor does it transform the legal question into a factual question appropriate for the jury. *Cf. Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 718–19 (Fed. Cir. 1984) (determining "[t]he introduction of a jury can not change the nature of . . . a legal issue for the court" in a patent case). This is especially true here where the question of qualified immunity was never presented for the jury's determination.

Plaintiff also asserts that the only plausible way Officer Grubbs could argue he was not on notice of the deadliness of tasing Mr. Blasingame would be "to deny the extensive training he allegedly received regarding his use of taser," including identification of "environmental considerations," Appellee's Br. at 38. But this argument misses the point. The City of Atlanta's standard operating procedures, policy manual, and training provided to its officers are not relevant to determining the clearly established law as it existed in July 2018. *Wade*,

13 F.4th at 1225 (stating a right must be clearly established "at the time of the challenged conduct."). Indeed, "the Supreme Court has observed that a violation of [a police department's internal procedures] does not itself negate qualified immunity where it would otherwise be warranted." *Knight*, 856 F.3d at 813 (quotation omitted). Only cases from the United States Supreme Court, this Court, or the Supreme Court of Georgia can clearly establish the law. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). And none of those cases in 2018 suggested that a hill with a hidden utility box would raise constitutional concerns for taser use, much less how a city training policy somehow supersedes the courts. At most, the City's training materials are relevant to refute Plaintiff's failure to train claim against the City, which is not at issue in this appeal.

## CONCLUSION

For the above reasons, this Court should hold that Officer Grubbs was entitled to qualified immunity and reverse the district court's denial of judgment as a matter of law.

Respectfully submitted this 28th day of January, 2025.

[*signatures on following page*]

27

*s/ James E. Dearing, Jr.*

James E. Dearing, Jr.
JAMES E. DEARING, JR., P.C.
1596 W. Cleveland Ave.
Suite 102
East Point, Georgia 30334
(404) 870-0010
jdearing@jed-law.com

s/ *Harold D. Melton*

Harold D. Melton
Charles E. Peeler
Elizabeth P. Waldbeser
Alexander J. Hill
TROUTMAN PEPPER LOCKE, LLP
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
harold.melton@troutman.com
charles.peeler@troutman.com
elizabeth.waldbeser@troutman.com
alex.hill@troutman.com

*Counsel for Appellant Officer J. Grubbs*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,641 words, excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word in Century Schoolbook 14-point font.

January 28, 2025

s/ *Harold D. Melton*
Harold D. Melton

*Counsel for Appellant Officer J. Grubbs*

29

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on January 28, 2025. I served all counsel of record by CM/ECF.

January 28, 2025

s/ *Harold D. Melton*
Harold D. Melton

*Counsel for Appellant Officer J. Grubbs*