# In the United States Court of Appeals
# for the Eleventh Circuit

KEITH EDWARDS, AS ADMINISTRATOR OF THE ESTATE OF JERRY
BLASINGAME,

*Plaintiff-Appellee,*

v.

OFFICER J. GRUBBS, #6416, ET AL.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:19-cv-02047 (Jones, J.)

## DEFENDANT-APPELLANT OFFICER JON GRUBBS' PETITION FOR REHEARING EN BANC

James E. Dearing, Jr.
JAMES E. DEARING, JR., P.C.
1596 W. Cleveland Ave., Ste. 102
East Point, GA 30334
(404) 870-0010
jdearing@jed-law.com

Justin T. Golart
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point, Suite 1500
Richmond, VA 23219
(804) 495-1733
justin.golart@troutman.com

Harold D. Melton
Charles E. Peeler
Elizabeth P. Waldbeser
Alexander J. Hill
TROUTMAN PEPPER LOCKE LLP
600 Peachtree Street NE, Ste. 3000
Atlanta, GA 30308
(404) 885-3000
harold.melton@troutman.com
charles.peeler@troutman.com
elizabeth.waldbeser@troutman.com
alexander.hill@troutman.com

*Counsel for Defendant-Appellant Officer Jon Grubbs*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following listed persons and entities have an interest in the outcome of this case.

1.  Atlanta Police Department

2.  Benedetto, Conrad J.

3.  Blasingame, Jerry

4.  Bryan, Marquetta J.

5.  Bull, Marion M.

6.  City of Atlanta

7.  Dearing Jr., James E.

8.  Desmond, Christopher P.

9.  Eason, Kimberly D.

10. Edwards, Keith

11. Golart, Justin T.

12. Grubbs, Officer J.

13. Hatchett, Ayanna D.

14. Hill, Alexander J.

15. Johnson, Vernon R.

16.     Jones, Hon. Steve C.

17.     Melton, Harold D.

18.     Miller, Staci J.

19.     Peeler, Charles E.

20.     Pierre, Hermise

21.     Perkins-Hooker, Patrise

22.     Raspberry, Brenda A.

23.     Tobin, Darren M.

24.     Waldbeser, Elizabeth P.

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant certifies that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

April 3, 2026

*s/ Harold D. Melton*
*Counsel for Defendant-Appellant*
*Officer Jon Grubbs*

## ELEVENTH CIRCUIT RULE 40-3(b) STATEMENT REGARDING EN BANC REVIEW

I express a belief, based on a reasoned and studied professional judgment, that the Panel decision is contrary to the following decision of the Supreme Court of the United States and the precedents of this Circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Anderson v. Creighton*, 483 U.S. 635 (1987); *Gilmore v. Georgia Department of Corrections*, 144 F.4th 1246 (11th Cir. 2025) (en banc).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves questions of exceptional importance: Whether a police officer in pursuit of a fleeing suspect uses excessive force by tasing him on a hill, when there is an unseen and unknown fixed object at the bottom of the hill; and whether every reasonable police officer would know that tasing a fleeing suspect in such circumstances is unconstitutional.

*s/ Harold D. Melton*
*Counsel for Defendant-Appellant*
*Officer Jon Grubbs*

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT........................................................................1

ELEVENTH CIRCUIT RULE 40-3(b) STATEMENT REGARDING EN BANC REVIEW..............................................................................i

TABLE OF AUTHORITIES................................................................ iii

STATEMENT OF ISSUES....................................................................1

STATEMENT OF THE CASE ...............................................................2

A.    Factual Background ...............................................................3

B.    Proceedings Below................................................................5

C.    The Panel Opinion................................................................6

ARGUMENT .......................................................................................7

I.    Grubbs did not violate Blasingame's Fourth Amendment rights...8

II.   Qualified immunity applies because Grubbs did not violate clearly established law. ..................................................................15

III.  En Banc review is unwarranted in Case Number 24-12925.........21

CONCLUSION ..................................................................................21

CERTIFICATE OF COMPLIANCE....................................................23

CERTIFICATE OF SERVICE............................................................24

ii

**Page(s)**

**Cases**

*Bradley v. Benton,*
10 F.4th 1232 (11th Cir. 2021) .............................. 6, 11, 12, 13, 14, 19

*Brower v. County of Inyo,*
489 U.S. 593 (1989)................................................................. 8

*Cantu v. City of Dothan,*
974 F.3d 1217 (11th Cir. 2020)....................................................... 17

*Corbitt v. Vickers,*
929 F.3d 1304 (11th Cir. 2019)..................................................... 8, 17

*Davis v. Waller,*
44 F.4th 1305 (11th Cir. 2022) ...................................................... 17

*District of Columbia v. Wesby,*
583 U.S. 48 (2018)................................................................. 15

*Draper v. Reynolds,*
369 F.3d 1270 (11th Cir. 2004)...................................................... 10

*Edwards v. Grubbs,*
Nos. 24-12787 & 24-12925, 2026 WL 706637 (11th Cir.
Mar. 13, 2026) ................................. 6, 7, 9, 10, 12, 13, 14, 16, 18, 19

*Fils v. City of Aventura,*
647 F.3d 1272 (11th Cir. 2011)....................................... 8, 10, 14, 21

*Gilmore v. Ga. Dep't of Corr.,*
144 F.4th 1246 (11th Cir. 2025) ...................................... 7, 16, 19, 20

*Graham v. Connor,*
490 U.S. 386 (1989)................................................... 8, 15, 19

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982)................................................................. 15

*Hope v. Pelzer,*
   536 U.S. 730 (2002)...............................................................18

*Jones v. Treubig,*
   963 F.3d 214 (2d Cir. 2020) .................................................6

*Lee v. Ferraro,*
   284 F.3d 1188 (11th Cir. 2002)............................................18

*Morrow v. Meachum,*
   917 F.3d 870 (5th Cir. 2019).................................................20

*Mullenix v. Luna,*
   577 U.S. 7 (2015)...................................................................11

*Nolin v. Isbell,*
   207 F.3d 1253 (11th Cir. 2000)............................................15

*Priester v. City of Riviera Beach,*
   208 F.3d 919 (11th Cir. 2000)..............................................19

*Richmond v. Badia,*
   47 F.4th 1172 (11th Cir. 2022) .................................... 16, 17

*Scott v. Harris,*
   550 U.S. 372 (2007)...............................................................10

*Terry v. Ohio,*
   392 U.S. 1 (1968)...................................................................20

*Vinyard v. Wilson,*
   311 F.3d 1340 (11th Cir. 2002)............................................17

*Wade v. Daniels,*
   36 F.4th 1318 (11th Cir. 2022) ..............................................9

*Zorn v. Linton,*
   No. 25-297, 2026 WL 795469 (Mar. 23, 2026) (per curiam)...............20

**Statutes and Rules**

42 U.S.C. § 1983 ...........................................................................5

O.C.G.A. § 40-6-50(a)..............................................................................3

**Other Authorities**

U.S. Const. amend. IV...........................................................................8

# STATEMENT OF ISSUES

1.     Does a police officer use excessive force when he tases a fleeing suspect on a hill, when there is an unseen and unknown fixed object at the bottom of the hill?

2.     In July 2018, was it clearly established law in this Circuit that a police officer uses excessive force when he tases a fleeing suspect on a hill, when there is an unseen and unknown fixed object at the bottom of the hill?

## STATEMENT OF THE CASE

In July 2018, a routine police pursuit ended in tragedy. When Jerry Blasingame, who was panhandling on the shoulder of a highway on-ramp in downtown Atlanta, saw Officer Jon Grubbs approaching him, he fled. Blasingame ignored Grubbs' command to stop and showed no signs of ending his flight. Grubbs pursued Blasingame along the shoulder until Blasingame crossed over a guardrail and into a densely overgrown area leading downhill toward another highway on-ramp.

Rather than continuing toward traffic, Grubbs deployed his taser to end the pursuit. Sadly, when Blasingame fell, his head struck the cement pedestal at the base of a utility box. Grubbs could not see the utility box when he tased Blasingame and had no way of knowing that tasing Blasingame risked catastrophic injury.

Nevertheless, over Judge Newsom's dissent, the Panel concluded that Grubbs used excessive force in violation of the Fourth Amendment, and that he is not entitled to qualified immunity because his actions were so egregious that any reasonable officer would have known they were unconstitutional, even without any materially similar case law.

## A.   Factual Background

On the afternoon of July 10, 2018, Grubbs observed Blasingame, who appeared to be panhandling, on the left shoulder of a two-lane highway on-ramp. Tr. 854:1–25; 1086:20–25.

Grubbs exited his partner's vehicle in a gore[1] to the right of the on-ramp and crossed both lanes of traffic to approach Blasingame. Tr. 1087:4–9; 1048:1–25. When Grubbs approached, Blasingame turned and ran away along the on-ramp's shoulder; Grubbs pursued Blasingame on foot. Tr. 1087:10–18; 1049:16–1050:13. During the pursuit, Grubbs commanded Blasingame to stop, but Blasingame continued to flee. Tr. 1051:11–18.

As Grubbs drew closer, Blasingame crossed over a roadside guardrail and continued his flight into an area densely overgrown with shrubs and other vegetation. Tr. 1054:3–11; Tr. 1051:23–1052:8. This area sloped downhill, through the overgrowth, to an open, grassy area adjacent to another highway on-ramp. Tr. 1056:3–6, 1075:10–13. In the

---

[1] A "gore" is "the area of convergence between two lanes of traffic." O.C.G.A. § 40-6-50(a). Here, the gore is the median created when two-lane traffic divides into two separate one-lane on-ramps, with the left lane going to one highway and the right lane to another.

grassy area at the bottom of the decline, invisible to Grubbs, was a metal utility box on a concrete pad. Tr. 538:23–539:5, 1089:4–12, 1090:12–1091:1.

As Blasingame was crossing the guardrail, but before he entered the overgrowth, Grubbs caught up with him. Tr. 1054:18–22, 1059:23–14. As Grubbs approached, Blasingame moved his arm backwards at Grubbs in a "clearance strike," Tr. 1056:1–23, but did not contact Grubbs. Tr. 1058:5–8. Again, Blasingame did not respond to Grubbs' verbal instruction to stop. Tr. 1051:13–18.

Blasingame's flight was leading towards traffic on the on-ramp beyond the grassy area, potentially endangering himself and the public. At this point, Grubbs drew and deployed his taser. Tr. 1068:10–1069:5. The taser caused Blasingame to fall down the decline, where he struck his head on the concrete base of the utility box. Tr. 538:23–539:5 (citing Ex. 39); 1075:14–1076:15. Grubbs' pursuit of Blasingame lasted no longer than 45 seconds. Tr. 1090:3–6.

Grubbs immediately used his radio to summon first responders to provide medical assistance to Blasingame, who was breathing but

unresponsive. 1091:17–1093:8. Blasingame was then transported to a hospital and treated for serious injuries. Tr. 1079:13–23.

## B.    Proceedings Below

Plaintiff Keith Edwards, on Blasingame's behalf, sued Grubbs and the City of Atlanta under 42 U.S.C. § 1983, alleging excessive force in violation of the Fourth Amendment's prohibition on unreasonable seizure. Doc. 52. ¶¶ 29–47. The case went to trial, where (as relevant here) the jury found Grubbs liable and returned a $40 million verdict— $20 million in compensatory damages and $20 million in punitive damages. Doc. 163 at 1–2.

Post-trial motions at the district court and this Court were extensive. *See* Br. of Appellant 6–11. Among other things, post-trial proceedings reduced the punitive damages award from $20 million to $1 million, for a total against Grubbs of $21 million. *Id.* at 9–10. As relevant here, Grubbs moved for judgment as a matter of law after trial, arguing no reasonable jury could find him liable for violating Blasingame's Fourth Amendment rights and, in the alternative, that he was entitled to qualified immunity. Doc. 176. The district court denied this motion, Doc. 177 at 30–32, holding that Grubbs deployed the taser against

Blasingame in violation of his constitutional rights as clearly established in *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021), Doc. 177 at 32–34.

**C.    The Panel Opinion**

On appeal, a Panel of this Court affirmed the district court's judgment that a reasonable jury could find Grubbs violated Blasingame's Fourth Amendment rights by using excessive force, and that Grubbs violated clearly established law. *Edwards v. Grubbs*, Nos. 24-12787 & 24-12925, 2026 WL 706637, at *6, *8 (11th Cir. Mar. 13, 2026).

The Panel first concluded that "[w]hen a suspect is in a vulnerable and dangerous elevated position, the use of a taser becomes equivalent to deadly force because it 'has the capacity to completely incapacitate the individual.'" *Id.* at *5 (quoting *Jones v. Treubig*, 963 F.3d 214, 229 (2d Cir. 2020) (alteration accepted)). Because Blasingame was tased "at the top of a 30-foot decline with a slope of 30 to 40 degrees and with dangers— a highway and a concrete structure—below," the Panel determined Grubbs used deadly force. *Id.*

The Panel then determined such force was excessive because, in its view, Blasingame "did not commit … a serious or dangerous crime," was unarmed and "not an immediate threat to Grubbs or his partner," and

"was never given a chance to finally comply before force was used." *Id.* at *5–6. The Panel further concluded that Grubbs' "deadly" taser use was "disproportionate" and that Blasingame's injuries were "severe." *Id.* at *6.

Based on these findings, the Panel determined Grubbs was not protected by qualified immunity because "deployment of a taser against a non-violent, non-dangerous, and unarmed suspect fleeing down a steep embankment" was a Fourth Amendment violation of "obvious clarity." *Id.* at *8. That is, it was "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.* at *7 (quoting *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025) (en banc)).

## ARGUMENT

Grubbs did not violate Blasingame's Fourth Amendment rights, and even assuming, *arguendo*, he did, the law was not clearly established at the time, making Grubbs entitled to qualified immunity. The constitutional violation and qualified immunity questions "do not have to be analyzed sequentially; if the law was not clearly established, [this Court] need not decide if [Grubbs] actually violated [Blasingame's]

7

rights, although [it] is permitted to do so." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011). On the other hand, if Grubbs did not use excessive force, the qualified immunity issue is moot.

## I.    Grubbs did not violate Blasingame's Fourth Amendment rights.

The Fourth Amendment prohibits, *inter alia*, unreasonable seizures, including the right to be free from excessive force during an investigatory stop. *See* U.S. Const. amend. IV. The Fourth Amendment, however, addresses "'misuse of power,' not the accidental effects of otherwise lawful government conduct." *Corbitt v. Vickers*, 929 F.3d 1304, 1317 (11th Cir. 2019) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989)). Thus, whether force is excessive "must … allow[] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

Whether force is excessive is an objective inquiry. *Id.* at 385. It "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The following factors determine whether force was excessive: "(1) the severity of the

suspect's crime; (2) whether the suspect poses an immediate threat of harm to others; (3) whether the suspect is actively resisting arrest or trying to flee; (4) the need for the use of force; (5) the relationship between the need for force and the amount of force used; and (6) how much injury was inflicted." *Wade v. Daniels*, 36 F.4th 1318, 1325 (11th Cir. 2022).

Under this standard, Grubbs did not use excessive force when he deployed his taser to stop Blasingame's flight toward a busy road. Indeed, given Grubbs' options at the time, tasing Blasingame likely carried less risk than the available alternatives, like shooting Blasingame, tackling him, or permitting him to continue the chase into "heavy" traffic in downtown Atlanta. *Edwards*, 2026 WL 706637, at *1. Blasingame was actively fleeing, after being ordered to stop, in an area off limits to pedestrians, heading directly toward a highway on-ramp. Blasingame's flight created very real risks to himself and unsuspecting drivers who would have little time to react after he emerged from the overgrowth. The Panel acknowledged as much: "Mr. Blasingame may have posed a threat to the drivers on the highway and might have put himself in danger had he run onto the highway, but he did not do so." *Edwards*, 2026 WL 706637, at *6. Indeed, the missing, obvious conclusion to this sentence is

"... because Grubbs tased him." Grubbs' decision to end Blasingame's flight was entirely reasonable. *See* Tr. 1068:10–1069:1.

To be sure, Blasingame's crimes were not severe, but *neither was Grubbs' response*. "A 'taser' is a non-deadly weapon commonly carried by law enforcement" that "permits the officer to incapacitate a suspect from a modest distance." *Fils*, 647 F.3d at 1276 n.2. That includes incapacitating a fleeing suspect long enough to stop his flight, but without the risk of serious injury or death that accompanies firearm use. Tasing is often preferable to tackling, because "[t]he single use of a taser gun" can "prevent[] a physical struggle and serious harm to either" the officer or the suspect. *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004). Under no circumstances was Grubbs constitutionally required to allow Blasingame to flee. *See Scott v. Harris*, 550 U.S. 372, 385–86 (2007).

The Panel, however, held that because Blasingame was fleeing *downhill*, Grubbs' taser use constituted "deadly force." *See Edwards*, 2026 WL 706637, at *5–7. Under Supreme Court precedent and this Court's own precedents, this conclusion was erroneous.

Deadly force is "force that an officer knows to create a substantial risk of causing death or serious bodily harm." *Bradley*, 10 F.4th at 1241.

Because the Fourth Amendment inquiry is one of objective reasonableness, that means a reasonable officer would know that tasing Blasingame on a hill would create a risk sufficiently extreme to convert non-lethal tasing into "deadly force." This is not a results-oriented inquiry, and courts have been cautioned against "refer[ring] to all use of force that happens to kill the arrestee as the application of deadly force." *Mullenix v. Luna*, 577 U.S. 7, 19 (2015) (Scalia, J., concurring).

Grubbs did not apply deadly force here, notwithstanding the ultimate, tragic outcome. Even if a reasonable officer could conclude there was *some* risk of injury in tasing Blasingame as he fled downhill, the risk was nowhere close to "a substantial risk of … death or serious bodily harm." *Bradley*, 10 F.4th at 1241. Blasingame's serious injuries did not occur when he fell, as Grubbs knew he would, but when his head struck the concrete base of an unobserved utility box, which no reasonable officer could anticipate.

The Panel opinion includes photographs of the utility box where Blasingame fell. *See Edwards*, 2026 WL 706637, at *1. But the more important photograph shows what Grubbs could (and could not) see from atop the hill when he deployed the taser:



Doc. 211-31 at 23; *see also* Tr. 1097:25–1098:17.

No reasonable juror could conclude from this photo (or any other evidence) that Grubbs saw the utility box when he tased Blasingame, and no reasonable officer would have known, from this vantage point, that tasing a fleeing suspect could "create a substantial risk of causing death or serious bodily harm." *Bradley*, 10 F.4th at 1241. Viewing Grubbs' application of *non-lethal* force objectively, as it must be, the force was not excessive.

The Panel also erred when it analogized this case to *Bradley*, in which this Court determined that "tasing a person who is *at an elevated*

*height* may come with a substantial risk of serious bodily harm or death." 10 F.4th at 1241 (emphasis added). In *Bradley*, the fleeing suspect (whom the officer lacked probable cause to pursue in the first place) was tased as he sat atop an eight-foot wall, "temporarily paralyzing him and causing him to fall, break his neck, and die." *Id.* at 1240, 1242.

*Bradley* is easily distinguishable. As Judge Newsom's dissent highlights, *Bradley* involved a fleeing suspect "in a particularly 'precarious position,' with nothing but air between him and the concrete below." *Edwards*, 2026 WL 706637, at *17 (Newsom, J., dissenting in part). Not only did that mean "[a]ny jolt … would lead him to lose his balance and fall from atop the wall," but the injury-causing object (the "concrete below") was, unlike the utility box here, fully visible and fully known to the officer. *Id.* The unique circumstances in *Bradley* prompted this Court to treat taser use as deadly force, even though "a taser is generally not a deadly weapon." 10 F.4th at 1241 (quoting *Fils*, 647 F.3d at 1276 n.2).

*Bradley* announced a narrow exception to the general rule that tasers are non-lethal: they become lethal when used on "a person who is at an elevated height," where the inevitable and obvious consequence is

an immediate, serious fall that risks serious bodily injury or death. *Id.* Here, on the other hand, "[w]hether framed in terms of physics, trigonometry, or plain old common sense, the circumstances … are just different." *Edwards*, 2026 WL 706637, at *17 (Newsom, J., dissenting in part).

Blasingame fell on a hill with an "angle of descent [of] 30–40°, not the 90° at issue in *Bradley*." *Id.* And Blasingame was not at an "elevated height," he was on the ground. So, even though both involve tasers, this case and *Bradley* are apples and oranges, and that is why the Panel opinion generates more questions than it answers. If tasing someone on a 30–40° angle of descent is excessive force, even when tasing the same person would be lawful on flat ground, what if the angle were 20°? Or 15°? A reasonable officer cannot answer these questions while making "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving," and, in concluding otherwise, the Panel applied the very "20/20 vision of hindsight" Supreme Court precedent prohibits. *Graham*, 490 U.S. at 396–97.

Regardless of whether Grubbs' decision to tase Blasingame was the *best* option, it was a *reasonable* option, and that is what the Fourth Amendment requires.

## II. Qualified immunity applies because Grubbs did not violate clearly established law.

Even if Blasingame could prove that Grubbs used excessive force, Grubbs is entitled to qualified immunity.

"Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Police officers are entitled to qualified immunity unless "the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quotation omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation omitted).

There are three paths to prove an officer violated a "clearly established" right: (1) "case law with indistinguishable facts"; (2) "a broad statement of principle within the Constitution, statute, or case law"; or (3) when the officer's "conduct [is] so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Gilmore*, 144 F.4th at 1258.

Here, there is no argument that either of the first two paths apply. The Panel analyzed and analogized to *Bradley* extensively but nevertheless recognized "*Bradley* was decided in 2021," three years after Grubbs tased Blasingame. *Bradley*, therefore, cannot supply the required prior-existing "materially similar case law" or "broader, clearly established principle" for paths (1) or (2), and Edwards does not assert any other case does. *Richmond v. Badia*, 47 F.4th 1172, 1184 (11th Cir. 2022).

That Edwards' qualified-immunity argument is based entirely on "QI's proverbial 'Bucket Three'" is a big deal. *Edwards*, 2026 WL 706637, at *17 (Newsom, J., dissenting in part). Only in "rare instances" will an officer, in the absence of case law, "have notice when their conduct violates a constitutional right with obvious clarity." *Richmond*, 47 F.4th

at 1184. When "case law, in factual terms, has not staked out a bright line, qualified immunity *almost always* protects the defendant." *Corbitt*, 929 F.3d at 1312 (emphasis added).

To prevail on "obvious clarity," therefore, Edwards "must show that [Grubbs'] conduct was so far beyond the hazy border between excessive and acceptable force that [he] had to know he was violating the Constitution even without caselaw on point." *Cantu v. City of Dothan*, 974 F.3d 1217, 1232–33 (11th Cir. 2020). And because excessive force is an objective analysis, that means Edwards must prove that *no reasonable officer* in Grubbs' position "could have believed that" tasing Blasingame as he fled downhill "was not excessive." *Davis v. Waller*, 44 F.4th 1305, 1318 (11th Cir. 2022) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)).

Grubbs' actions fall well short of the "obvious clarity" threshold, or at least they did before the Panel announced otherwise. As Judge Newsom's dissent explains, the "obvious clarity" exception to qualified immunity essentially means whatever this Court says it does. *See Edwards*, 2026 WL 706637, at *17 (Newsom, J., dissenting in part) ("Grubbs' conduct clearly violated the Fourth Amendment because, well,

we say it did."). But even if the Panel *could* extend "obvious clarity" to reach Grubbs' conduct, its conclusion still merits en banc reconsideration due to its seismic impact on qualified immunity—and, by extension, law enforcement—throughout this Circuit.

Before this case, "obvious clarity" in this Circuit meant legitimately egregious conduct. Judge Newsom's dissent highlights two examples: In *Hope v. Pelzer*, an inmate was placed in handcuffs and leg irons and attached to a "hitching post," where "he remained shirtless all day while the sun burned his skin." 536 U.S. 730, 734–35 (2002). And in *Lee v. Ferraro*, the officer "slammed" a woman's head onto her car's trunk "*after* she was arrested and secured in handcuffs" for honking her horn. 284 F.3d 1188, 1198 (11th Cir. 2002).

Other examples are similar. "Obvious clarity" applies when police threaten to kill, and order their dog to "attack and bite … for at least two minutes," a person suspected of stealing "$20 of snacks and crackers" who was on the ground and had "submitted immediately to the police." *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000). *Bradley* applied "obvious clarity" because tasing someone suspended at an "elevated height" is tantamount to deadly force, which is excessive

when applied to the fleeing passenger of someone suspected of driving with an illegal tag. 10 F.4th at 1244. And, in *Gilmore*, a prison visitor was required to submit to a body-cavity strip search "without *any* predicate requirement of individualized suspicion or showing of special and highly unusual institutional need," and without the option to leave. 144 F.4th at 1256.

As Judge Newsom correctly observed, "Grubbs' actions here don't even belong in the same conversation as" these cases. *Edwards*, 2026 WL 706637, at *17 (Newsom, J., dissenting in part). Indeed, this Court rarely applies "obvious clarity" in cases involving *noncompliant* suspects, and with good reason. Because excessive-force cases require "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving," *Graham*, 490 U.S. at 396–97, courts wisely err on the side of qualified immunity unless "the law [is] *so* clearly established that—in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it immediately," *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019).

Moreover, the Supreme Court has consistently reiterated that it means what it says about qualified immunity. The Court "reserves the

extraordinary remedy of a summary reversal for decisions that are manifestly incorrect," but "routinely wields this remedy against denials of qualified immunity." *Id.* (quotation omitted) (collecting cases). That pattern continues to this day, as just last week the Supreme Court summarily reversed the Second Circuit's denial of qualified immunity to a police officer who used a wristlock to remove a protestor. *Zorn v. Linton*, No. 25-297, 2026 WL 795469, at *3 (Mar. 23, 2026) (per curiam).

Here, if anything, existing case law suggests Grubbs chose the best option he had at the time. He knew shooting Blasingame was not an option, tackling Blasingame down a steep embankment would add his own weight to Blasingame's fall, and letting Blasingame go would ignore "society's interest in having its laws obeyed." *Terry v. Ohio*, 392 U.S. 1, 26 (1968). Given all this, tasing Blasingame was a reasonable response. And it was emphatically not "conduct so egregious that a constitutional right was clearly violated." *Gilmore*, 144 F.4th at 1258.

The Panel's decision holds Grubbs liable for a reasonable (even if imperfect) choice in rapidly evolving circumstances that demanded split-second professional judgment in the face of unforeseen risks. That scenario is precisely why qualified immunity exists.

20

## III.  En Banc review is unwarranted in Case Number 24-12925.

There is no need to rehear the issues raised in Case No. 24-12925, which was consolidated with this appeal. There, the Panel correctly affirmed the district court's judgments regarding municipal liability, punitive damages, state-law responsibilities of governmental units over inmates in custody, and attorneys' fees.

## CONCLUSION

For the above reasons, this Court should vacate the Panel opinion and reconsider en banc whether Grubbs used excessive force and, if so, whether he is entitled to qualified immunity.

Respectfully submitted this 3rd day of April, 2026.

[*Signatures on following page*]

*s/ James E. Dearing, Jr.*
James E. Dearing, Jr.
JAMES E. DEARING, JR., P.C.
1596 W. Cleveland Ave.
Suite 102
East Point, Georgia 30334
(404) 870-0010
jdearing@jed-law.com

Justin T. Golart
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point, Suite 1500
Richmond, VA 23219
(804) 495-1733
justin.golart@troutman.com

*s/ Harold D. Melton*
Harold D. Melton
Charles E. Peeler
Elizabeth P. Waldbeser
Alexander J. Hill
TROUTMAN PEPPER LOCKE LLP
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
harold.melton@troutman.com
charles.peeler@troutman.com
elizabeth.waldbeser@troutman.com
alexander.hill@troutman.com

*Counsel for Defendant-Appellant Officer J. Grubbs*

# CERTIFICATE OF COMPLIANCE

This petition complies with the word limit of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,830 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word in Century Schoolbook 14-point font.

April 3, 2026

*s/ Harold D. Melton*
Harold D. Melton

*Counsel for Defendant-Appellant*
*Officer J. Grubbs*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on April 3, 2026. I served all counsel of record by CM/ECF.

April 3, 2026

*s/ Harold D. Melton*
Harold D. Melton

*Counsel for Defendant-Appellant*
*Officer J. Grubbs*

24